**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Tammy Whitten,

Plaintiff,

v.

Commissioner of Social Security Administration,

Defendant.

No. CV-21-01132-PHX-GMS

**ORDER**

Plaintiff challenges the dismissal of her October 2019 application for disability insurance benefits under Title II of the Social Security Act ("the Act"). Having reviewed the briefs and Administrative Record (Doc. 15, AR.), the Court finds it has no subject matter jurisdiction to review the Commissioner's October 23, 2020 Order of Dismissal. (AR. at 27-31.) Accordingly, this action is dismissed.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for disability benefits in June 2014 alleging disability beginning May 2013. (AR. at 387.) She was insured for Title II disability benefits until June 30, 2017. (AR. at 389, 446.) The Commissioner denied this application at the initial and reconsideration levels of administrative review, and Plaintiff timely requested a hearing. (AR. at 387.) Administrative Law Judge ("ALJ") Guy Fletcher presided over a hearing on February 16, 2017, at which the Plaintiff and a vocational expert testified. (AR. at 284-307.) Plaintiff was represented at this hearing. (AR. at 284.) The ALJ issued an

unfavorable decision on July 3, 2017. (AR. at 387-401.) He concluded Plaintiff had the residual functional capacity ("RFC") to perform her past relevant work and was not disabled at step four. (AR. at 395.) Plaintiff timely appealed, but the Appeals Council denied review in a letter dated May 22, 2018. (AR. at 308-10.) Plaintiff did not challenge the final ALJ denial in federal court.

Plaintiff filed her current application in October 2019 alleging disability beginning June 29, 2017 (AR. at 439-40)—one day before her insured status expired (AR. at 389). The Commissioner denied Plaintiff's claim at the initial level of administrative review on the basis that her condition was not disabling through her date last insured ("DLI"). (AR. at 402-06.) Plaintiff filed for reconsideration with the assistance of new counsel, but on June 2, 2020, her request was denied on res judicata grounds. (AR. at 412-14.) The notice explained, "Res judicata applies when the subsequent application presents no new facts or issues from the ones considered in the prior decision." (AR. at 412.) The notice further explained that, if Plaintiff disagreed, she could request a hearing within 60 days, which would be reviewed by an ALJ. (AR. at 412.)

Throughout the initial and reconsideration phases of this new application, the state agency processing Plaintiff's claim received new evidence from the previously-adjudicated period ending on Plaintiff's June 30, 2017 DLI. This evidence included additional treatment notes from Plaintiff's primary care providers at Mountain Park Health Center dated from August 31, 2015 to February 21, 2020 (AR. at 906-926, 1017-1061, 1162-1232); May 2016 and May 2017 notes from her treating neurologist, Dr. Kari Patterson (AR. at 962-63); visits from Plaintiff's treating podiatrists dated from May 2017 to May 2018 (AR. at 970-1009); and visits from her treating pain management provider, Dr. Otto Uhrik, dated from June 2017 to May 2020 (AR. at 1089-1161, 1235-1345). These records also included other evidence of Plaintiff's treatment for other impairments throughout 2018 and 2019 (AR. at 928-54, 1062-1083) and an assessment form from her treating provider (AR. at 1233-1234).

On July 29, 2020, the SSA sent Plaintiff a letter acknowledging her hearing request.

(AR. at 416-18.) The letter explained, among other things, that Plaintiff must inform and submit to the ALJ all evidence known to her, that an ALJ would consider the issues and the evidence, and that Plaintiff could see the evidence in her file upon request. (AR. at 417.) The letter stated a hearing would be scheduled. (AR. at 416.)

In a letter dated October 23, 2020, however, ALJ Paul Isherwood dismissed Plaintiff's request for a hearing on res judicata grounds. (AR. at 27-31.) ALJ Isherwood found that none of the regulatory conditions justified reopening Plaintiff's prior application, and that "the previous decision remains final and binding." (AR. at 30.) The ALJ noted he had compared the evidence from the prior file to the evidence in the current file, and that he found "no new and material evidence has been submitted and that there has been no change in statute, regulation, ruling or legal precedent concerning the facts and issues ruled upon in connection with the previously adjudicated period." (AR. at 30.) "Accordingly," he reasoned, "the claimant's rights on the same facts and on the same issues are involved and the doctrine of *res judicata* applies." (AR. at 31.)

Plaintiff then filed a Request for Review with the Social Security Appeals Council. (AR. at 23-26.) With it, she submitted additional treatment records, including records of additional visits with Dr. Patterson dating from August 2014 to September 2015 (AR. at 148-51), physical therapy notes from December 2016 to January 2017 (AR. at 244-52), and a right shoulder operative report from May 2015 (AR. at 267-69). These records also included updated primary care notes (AR. at 108-123), pain management notes (AR. at 57-80), and an assessment form completed by Plaintiff's treating pain management provider (AR. at 203-204). In a letter dated April 30, 2021, the Appeal Council declined review. (AR. at 1-2.) The Administrative Appeals Judge noted Plaintiff's additional evidence had been considered, but that did not show that different facts or issues were involved, it was not relevant to the time period, or that it was previously considered in the prior determination. (AR. at 2.) Plaintiff then commenced this civil action. (Doc. 1.)

## II. ISSUES

Was there new material evidence sufficient to reopen Plaintiff's claim, and is the

ALJ's decision to deny reopening her claim based on res judicata reviewable? Does the denial constitute "manifest injustice" or a denial of due process?.

**III. DISCUSSION**

Res judicata applies in administrative proceedings such as disability determinations, although "less rigidly" than in judicial proceedings. *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988). In disability determinations, ALJs may invoke res judicata to bar reopening of a prior application for benefits concerning a previously adjudicated period of alleged disability, or ALJs could apply it to bar benefits for a subsequent period under a new application for benefits. *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995), as amended (Apr. 9, 1996). An ALJ's determination that a claimant is not disabled creates a rebuttable presumption of continuing non-disability as to any subsequent, non-adjudicated period, but "[t]he Commissioner's authority to apply res judicata to the period subsequent to a prior determination is much more limited." *Id*. To overcome this presumption, Plaintiff need only show "changed circumstances," such as a worsening of a pre-existing impairment, a change in age category since the prior denial, or the existence of a new impairment not previously considered. *Lester*, 81 F.3d at 827.

Still, "[t]he Commissioner may . . . apply res judicata to bar reconsideration of a period with respect to which she has already made a determination, by declining to reopen the prior application." *Id*. (citing *Krumpelman v. Heckler*, 767 F.2d 586, 588 (9th Cir.1985)). "[T]he doctrine [of res judicata] retains full force when applied to adjudications of 'past facts, where the second proceeding involves the same claim or the same transaction.'" *Stuckey v. Weinberger*, 488 F.2d 904, 911 (9th Cir. 1973) (citations omitted). In these instances, generally, "the Commissioner's refusal to reopen her decision as to an earlier period is not subject to judicial review." *Lester*, 81 F.3d at 827. This is because the decision not to reopen a previously adjudicated claim "is purely discretionary and is therefore not considered a 'final' decision within the meaning of § 405(g)." *Krumpelman*, 767 F.2d at 588; *e.g.*, *Davis v. Schweiker*, 665 F.2d 934, 935 (9th Cir. 1982) ("Once a decision becomes administratively final, the Secretary's decision to reopen a claim is

purely discretionary. These discretionary decisions are not 'final' decisions within the meaning of s 405(g) . . . .")[1] Permitting judicial review of a discretionary decision not to reopen a prior claim "would frustrate the congressional purpose . . . to impose a 60-day limitation upon judicial review of the Secretary's final decision on the initial claim for benefits." *Califano v. Sanders*, 430 U.S. 99, 108 (1977).

There are exceptions to this jurisdictional bar. The Court may exercise jurisdiction to avoid "manifest injustice." *Thompson v. Schweiker*, 665 F.2d 936, 940-41 (9th Cir. 1982); *Davis*, 665 F.2d at 935-36. The Court may exercise jurisdiction where a "de facto reopening occurs," such as where the Commissioner considers "on the merits the issue of the claimant's disability during the already-adjudicated period." *Lester*, 81 F.3d at 827 n.3 (quotations omitted); *Lewis v. Apfel*, 236 F.3d 503, 510 (9th Cir. 2001). The Court may also exercise jurisdiction "where there is a 'colorable constitutional claim of due process violation that implicates a due process right either to a meaningful opportunity to be heard or to seek reconsideration of an adverse benefits determination.'" *Klemm v. Astrue*, 543 F.3d 1139, 1144 (9th Cir. 2008) (citations omitted). Although jurisdiction over these discretionary reopening determinations is generally barred, "the district court has the jurisdiction to determine, and should determine, whether the claim precluded is the same as the claim previously determined." *Krumpelman*, 767 F.2d at 588 (citing, but distinguishing, *McGowen v. Harris*, 666 F.2d 60, 66 (4th Cir.1981)). This Court has "jurisdiction to determine [its] own jurisdiction[.]" *Klemm*, 543 F.3d at 1141 (citations omitted). As such, this Court must first examine whether Plaintiff's claims are the same, *i.e.*, whether they involve the same facts and issues. 20 C.F.R. § 404.957(c)(1). If they do, and res judicata was properly applied, then this Court must examine Plaintiff's request for remand under the exceptions to the jurisdictional bar that Plaintiff raises in her Opening Brief: manifest injustice and colorable constitutional claim. (Pl. Br. at 16-17, 24-25.)[2]

---

[1] "Judicial review of claims arising under Title II or Title XVI of the Social Security Act is authorized and limited by 42 U.S.C. § 405(g)." *Subia v. Comm'r of Soc. Sec.*, 264 F.3d 899, 902 (9th Cir. 2001).

[2] Plaintiff does not argue a "de facto" reopening occurred here.

**a. Res Judicata**

Where there is a prior, final disability determination, the ALJ may apply res judicata to dismiss a hearing request where he determines the subsequent application involves "the same facts and[ ]the same issue or issues . . . [.]" 20 C.F.R. § 404.957(c)(1). Claims for benefits alleging disability for a period that was already adjudicated are the same claim. *See Krumpelman*, 767 F.2d at 588 (res judicata applied to period already adjudicated); *Green v. Heckler*, 803 F.2d 528, 530 (9th Cir. 1986). ("[W]hen a claimant reapplies for disability benefits after an earlier denial, that earlier denial precludes the claimant from arguing that he was disabled during the period covered by the earlier decision.")

Plaintiff brings the same claim on the same issues and material facts. At issue in both claims is her entitlement to disability insurance benefits on or before June 30, 2017, her date last insured. (AR. at 395, 439-40.) The Commissioner determined Plaintiff's eligibility for this period, and that determination was made final. (AR. at 308-12.) Plaintiff's submission of new evidence from the disputed period does not create new issues or material facts in this case because that evidence bears on issues that were under consideration in her prior application, *i.e.*, her headaches, right shoulder impairment, and complex regional pain syndrome ("CRPS"). *See Booz v. Sec'y of Health & Hum. Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1984) (evidence is material when there is a "*reasonable possibility* that the new evidence would have changed the outcome . . . .") (quotations omitted, emphasis in original); *cf. McGowen*, 666 F.2d at 67 ("The unitary nature of the claim is not affected by the fact that following denial on the merits of the claim as originally presented, the claimant presented 'new and material' evidence tending to establish . . . [his entitlement].").[3] As such, a finding of res judicata is appropriate, and this Court does not

[3] The newly submitted evidence from the relevant period—including neurology notes, primary care records, physical therapy records, and the right shoulder operative report—all bears on issues that were under consideration in Plaintiff's prior application. While Dr. Patterson's records from 2014 and 2015 showed that Plaintiff had occasional exacerbations of migraines, Plaintiff testified in detail to the impact of her migraines during the February 2017 hearing (AR. at 288-91), and her migraine treatment, such as occipital nerve blocks, was otherwise a matter of record. (AR. at 484-85, 502, 882, 898-900.) So, too, was her right shoulder surgery. (AR. at 287-88, 833, 900.) Plaintiff asserts the ALJ did not consider her complex regional pain syndrome in the July 2017 decision (Pl. Br. at 13, 19), but as Plaintiff herself notes, she testified at her February 2017 hearing that reflex sympathetic

have jurisdiction to review this "purely discretionary" agency decision. *Davis*, 665 F.2d at 935; *Concannon v. Saul*, No. 20-15732, 2021 WL 2941767, at *1 (9th Cir. July 13, 2021) ("We have no jurisdiction to review an ALJ's decision not to reopen a claim or an ALJ's ruling that such a claim is res judicata.") (citing *Krumpelman*, 767 F.2d at 588).

Cases upon which Plaintiff relies, such as *Lester* and *Gregory* are distinguishable, as they involve subsequent, unadjudicated periods of disability, and hence, new, unadjudicated claims. In *Lester*, the Ninth Circuit held res judicata did not bar a second claim for a later period where the claimant alleged new impairments not previously considered and changed age categories. 81 F.3d at 827-28. In *Gregory*, the Ninth Circuit held res judicata did not bar a second claim for a subsequent period where the claimant alleged new impairments not previously considered and the ALJ considered the merits of the claim for the prior period, even when the gap between Plaintiff's prior determination and her DLI was only a few days. 844 F.2d 664, 666 (9th Cir. 1988). Here, the ALJ's decision post-dates Plaintiff's date last insured, the impairments under consideration are the same (*infra*), and Plaintiff was represented at the time of the prior decision. All of these facts set this case apart from *Gregory*.

Plaintiff argues, citing *Lester*, 81 F.3d at 827, that evidence of a new impairment precludes application of res judicata because it raises a new issue. (Reply at 10.) She points to her diagnosis of CRPS-II in June 2018, which differs from her diagnosis in the prior file of CRPS-I (also known as reflex sympathetic dystrophy or "RSD"), which the prior ALJ considered. (Reply at 10, citing AR. at 959.) According to Plaintiff, CRPS-II and CRPS-I are the same impairment, but where CRPS-I involves some "uncertainty as to the exact nerve injured[,] . . . [a diagnosis of CRPS-II is appropriate where] a doctor identifies a

---

dystrophy—also known as complex regional pain syndrome—was her "primary impairment." (Pl. Br. at 19, citing AR. at 286.) Plaintiff testified she suffered a bike injury in June 2009 resulting in a nerve crush injury; that she cannot wear close-toed shoes as a result; and that she is hypersensitive to touch in her left foot. (AR. at 286.) She testified she walks with a cane because of her RSD. (AR. at 287.) The record before the prior ALJ included evidence of Plaintiff's RSD treatment (AR. at 650-51, 657-58, 664, 762, 783, 785, 849), and the ALJ in the prior decision undoubtedly considered treatment notes related to this condition. (AR. at 393.) Plaintiff's foot surgery, which she submits as new and material evidence, occurred over six months after her insured status elapsed. (AR. at 981.)

specific nerve being injured." (Reply at 9-10, citations omitted.) The difference between CRPS-I and II, according to Plaintiff, is additional information regarding the exact location of the nerve injury. (Reply at 10.) But the prior ALJ already considered the functionally limiting effects of this impairment, just under a different name. (AR. at 393.) Whether the ALJ's RFC limitations were based upon CRPS-I or II, the RFC determination, and the hypothetical upon which it was based, "must [have] include[d] all of the claimant's functional limitations, both physical and mental supported by the record." *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002) (quotations omitted); *Horton v. Comm'r, Soc. Sec. Admin.*, No. CIV. SAG-12-1940, 2013 WL 1953328, at *2 (D. Md. May 9, 2013) ("[A]n RFC is properly expressed in terms of abilities and limitations, not diagnoses.") As such, Plaintiff's more recent diagnosis does not create a new issue precluding the application of res judicata.

Plaintiff further argues there was an "unadjudicated period of disability" between her hearing date in February 2017 and her date last insured at the end of June 2017, and that the ALJ should not have applied res judicata to this period. (Pl. Br. at 15.) In her March 2019 application, Plaintiff alleged disability beginning on June 29, 2017—one day before her date last insured—although she insists in her Reply that the Commissioner's administrators selected this date. (Reply at 13 n. 5). Still, the ALJ decision, by its terms, applies to the period ending on the date of the decision, in this case July 3, 2017 (AR. at 387-401), and Plaintiff offers no legal authority why it does not or should not. (Pl. Br. at 15, Reply at 13.) The period adjudicated, in the instance of a Title II denial at the ALJ level, is the earliest of the ALJ decision date or the claimant's DLI. SSA Program Operations Manual System ("POMS") § DI 27510.001. "The POMS does not have the force of law, but it is persuasive authority." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1005 (9th Cir. 2006) (citations omitted). The ALJ decision is dated in July 2017, after Plaintiff's DLI. (AR. at 387-96.) As such, the Court declines to find there was an unadjudicated period.[4]

[4] Plaintiff also asserts the Commissioner promulgated a new Social Security Ruling after the July 2017 denial, which justifies consideration. (Pl. Br. at 13, Reply at 11.) Under 20

In her Opening Brief, Plaintiff distinguishes res judicata and reopening: "Res judicata is separate from re-opening. As a general matter, the Commissioner's refusal to reopen her decision as to an earlier period is not subject to judicial review. The Commissioner's authority to apply res judicata is not so limited." (Pl. Br. at 2 n. 1.)[5] But in cases involving an already adjudicated period of benefits, these concepts are "two sides of the same coin, each relying on the same rationale." *Annette S. v. Comm'r, Soc. Sec. Admin.*, No. 1:20-CV-00175-RDC, 2021 WL 9721147, at *2 (N.D. Ga. Sept. 16, 2021).[6] It is true that "[t]he Commissioner's authority to apply res judicata to the period *subsequent* to a prior determination is much more limited." *Lester*, 81 F.3d at 827 (emphasis in original). But when the Commissioner declines to reopen a prior claim as res judicata, that decision is non-final, discretionary, and outside this Court's jurisdiction, unless application of res judicata was inappropriate, or some jurisdictional exception applies. *Davis*, 665 F.2d at 935; *Krumpelman*, 767 F.2d at 588.

**b. Manifest Injustice**

Manifest injustice occurs "[w]here the record is patently inadequate to support the findings the ALJ made, [such that] application of res judicata is tantamount to a denial of due process." *Thompson*, 665 F.2d at 941; *Concannon v. Saul*, No. CV 19-00267-ACK-RT, 2020 WL 1492623, at *5 (D. Haw. Mar. 27, 2020), *aff'd*, No. 20-15732, 2021 WL

C.F.R. § 404.989(b), however, the Commissioner will "not find good cause to reopen [the] case if the only reason for reopening is a change of legal interpretation or administrative ruling upon which the determination or decision was made." Plaintiff also does not adequately explain how the ruling in question changes the analysis or the result, or how it precludes the ALJ's application of res judicata. (Reply at 11.)

[5] The Court is confident Plaintiff intended to say the Commissioner's ability to apply res judicata is *more* limited, or that the Court's ability to review the Commissioner's res judicata finding is "not so limited."

[6] In her Reply, Plaintiff relied upon *Rowan v. Colvin*, 652 F. App'x 541 (9th Cir. 2016) (unpublished), for the proposition that a claimant "could potentially establish disability prior to the DLI and prevail on the second claim, despite reopening being unavailable." (Reply at 3.) But the Court need not address *Rowan* at length because it does not support the conclusion that this Court has jurisdiction to hear a discretionary agency determination, absent any exceptions. The Court in *Rowan* merely held that when the ALJ found a claim *not barred* by res judicata because the claimant submitted new, material evidence, the ALJ was required to actually review the prior file before he concluded the claimant was not disabled. *Rowan*, 652 F. App'x at 543.

2941767 (9th Cir. July 13, 2021). The application of res judicata to Plaintiff's claim would not result in manifest injustice. While Plaintiff summarizes new evidence of impairment from the period at issue (Pl. Br. at 3-9), the Court cannot conclude this evidence is so persuasive as to render the prior record "patently inadequate to support" the ALJ's findings. *Thompson*, 665 F.2d at 941. The new evidence from the adjudicated period—which includes records from Plaintiff's primary care providers at Mountain Park Health ranging from late 2015 until early 2017 and her treating neurologist from late 2014 until mid-2016—discusses medical treatment that was elsewhere in the record before the ALJ. The notes from Dr. Patterson that Plaintiff submitted with her new application and to the Appeals Council show that Plaintiff presented with complaints of headaches and low back, leg, neck, and shoulder pain (AR. at 148-52, 962-63), but treatment for these impairments is reflected elsewhere in the record (AR. at 645-58, 776-87, 791-93, 803-10, 815-27, 833-50, 855-900), and Plaintiff testified regarding the functional impact of each of these impairments at her February 2017 hearing (AR. at 286-302). Her records from Mountain Park Health reflect she mostly presented with complaints and symptoms that were being treated by other specialists of record. (AR. at 205-225.) Plaintiff cites a right shoulder surgery previously "not considered" by the ALJ, but this surgery is referenced in the notes the prior ALJ had before him (AR. at 833, 837, 900, 904), including those from the surgeon himself (AR. at 818-27), and, again, Plaintiff testified to the surgery during her prior hearing (AR. at 287-89).

The Court also notes that most of the evidence Plaintiff submits is dated after her February 2017 hearing, or after her unfavorable decision was issued. While still relevant to the question of her pre-DLI condition, *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988), that evidence can be less probative, *see Lombardo v. Schweiker*, 749 F.2d 565, 567 (9th Cir. 1984) (the ALJ "reasonably evaluated the remoteness" of a doctor's examination which formed the basis of a report on the claimant's functioning); *Whitten v. Colvin*, 642 F. App'x 710, 713 (9th Cir. 2016) (no colorable constitutional claim by failing to add to the administrative record evidence that post-dated the ALJ decision); *see* 20 C.F.R. §

404.970(a)(5) (the Appeals Council will review a claim if it "receives additional evidence that is new, material, and *relates to the period on or before the date of the hearing decision*, and there is a reasonable probability that the additional evidence would change the outcome of the decision.") (emphasis added). Plaintiff asks the Court to assume jurisdiction and remand based upon a perfected record with new evidence dated after the relevant period. *See Mayes v. Massanari*, 276 F.3d 453, 463 (9th Cir. 2001) ("A claimant does not meet the good cause requirement by merely obtaining a more favorable report once his or her claim has been denied."); *Gibb v. Astrue*, No. CIV. 09-533-HA, 2010 WL 988467, at *3 (D. Or. Mar. 15, 2010), *aff'd sub nom.* 420 F. App'x 767 (9th Cir. 2011). The Court declines. Importantly, Plaintiff has also not alleged good cause sufficient to justify the late submission of these records.[7] *Clem v. Sullivan*, 894 F.2d 328, 332-33 (9th Cir. 1990).

On her prior application, Plaintiff was represented by counsel and afforded an opportunity for a hearing. At that hearing, she was questioned by both the ALJ and her representative as to her impairments and symptoms, the course of her treatment, her functional restrictions, and her daily activities (AR. at 286-302). *Cf. Thompson*, 665 F.2d at 941 (finding the record inadequate where the ALJ did not ask an unrepresented claimant about key impairments or the circumstances of his sheltered work activity). The prior evidence the ALJ considered included treatment records from Plaintiff's pain management providers (AR. at 803-12, 833-48, 851-905), podiatrist (AR. at 849-50), primary care providers (AR. at 673-775), orthopedists (AR. at 645-72, 789-94, 813-29), neurologists (AR. at 776-88), and gastroenterologists (AR. at 628-44). It included emergent care records (AR. at 601-27) and a psychological consultative examination (AR. at 795-802). The Court acknowledges that Plaintiff submitted evidence that is new and relevant to the period under review, but while the Plaintiff summarizes these records at length showing a progression of her overall condition, they do not compel a finding the record before the ALJ was patently inadequate. *See Concannon*, 2020 WL 1492623, at *9 ("Even though

[7] Plaintiff was also required to notify the ALJ of and submit all evidence from the 2017 period at least five business days before the scheduled hearing, or the ALJ may have declined to consider it. 20 C.F.R. § 404.935(a).

Concannon's counsel submitted the records of Dr. Rudlowski overlapping with the prior period through the date last insured, Concannon has not established that such evidence compels a different conclusion on the pre-2010 period.") As such, manifest injustice would not occur with the application of res judicata.

**c. Colorable Constitutional Claim**

Despite the jurisdictional bar against discretionary Social Security decisions, "federal subject matter jurisdiction exists 'where the . . . denial of a petition to reopen is challenged on constitutional grounds.'" *Klemm*, 543 F.3d at 1144 (quoting *Califano*, 430 U.S. at 109). This exception applies only to "colorable" constitutional claims. *Id*. "A constitutional claim is colorable if it is 'not wholly insubstantial, immaterial, or frivolous.'" *Id*. (quoting *Udd v. Massanari*, 245 F.3d 1096, 1099 (9th Cir. 2001)). The "mere allegation of a due process violation" is insufficient. *Id*. (quoting *Anderson v. Babbitt*, 230 F.3d 1158, 1163 (9th Cir. 2000)). "Rather, the claim must be supported by 'facts sufficient to state a violation of substantive or procedural due process.'" *Id*. (quoting *Anderson*, 230 F.3d at 1163). Plaintiff's facts do not rise to this level.

The Commissioner first denied Plaintiff's second application on res judicata grounds in a notice dated June 2, 2020. (Pl. Br. at 16-17, citing AR. at 412.) Plaintiff argues she "was not advised as to what would be needed to overcome res judicata nor was she advised as to the meaning or effect of res judicata." (Pl. Br. at 17.)[8] Plaintiff states the Commissioner advised her of her right to request a hearing, but that the Commissioner denied this request "without advanced notice of an intent to dismiss the claim[.]" (Pl. Br. at 17.) As a result, Plaintiff argues she "did not receive due process[,]" which, she submits, includes "an opportunity to effectively prepare and present argument to the ALJ[,] . . . meaningful notice[,] and meaningful review processes." (Pl. Br. at 17.) Plaintiff provides no citation to legal authority in this section of her Opening Brief. (Pl. Br. at 17.)

Plaintiff has failed to assert a colorable constitutional claim. She was not, as a matter of course, procedurally entitled to a hearing to determine whether res judicata prohibits the

[8] The Court notes Plaintiff was represented at this point. (AR. at 411.)

reopening of a prior application. As the Supreme Court noted in *Sanders*,

> [A] petition to reopen a prior final decision may be denied without a hearing as provided in s 205(b), 42 U.S.C. s 405(b) (1970 ed., Supp. V); *see Cappadora v. Celebrezze*, 356 F.2d 1, 4 (CA2 1966); *Ortego v. Weinberger*, 516 F.2d 1005, 1007 (CA5 1975). Indeed, the opportunity to reopen final decisions and any hearing convened to determine the propriety of such action are afforded by the Secretary's regulations and not by the Social Security Act. Moreover, an interpretation that would allow a claimant judicial review simply by filing and being denied a petition to reopen his claim would frustrate the congressional purpose, plainly evidenced in s 205(g), to impose a 60-day limitation upon judicial review of the Secretary's final decision on the initial claim for benefits. 20 CFR s 404.951 (1976). Congress' determination so to limit judicial review to the original decision denying benefits is a policy choice obviously designed to forestall repetitive or belated litigation of stale eligibility claims. Our duty, of course, is to respect that choice.

430 U.S. 99, 108 (1977); *Jane S., v. Comm'r Soc. Sec. Admin.*, No. 6:20-CV-00219-AC, 2021 WL 4303389, at *4 (D. Or. Sept. 21, 2021) (citing *Sanders*). The Commissioner's regulations do not otherwise prescribe an entitlement to administrative hearings under these circumstances. *See* 20 C.F.R. § 404.988 (describing the circumstances under which "[a prior] determination . . . *may* be reopened . . . .") (emphasis added)*; see also Hoover v. Colvin*, No. 3:13-CV-00823-SI, 2013 WL 6385925, at *4 (D. Or. Dec. 6, 2013) ("The purpose of § 404.988[ ]is to grant the Commissioner discretion to reopen final decisions; it does not impose an affirmative obligation on the Commissioner to take action.") "Once a decision becomes administratively final, the Secretary's decision to reopen a claim is purely discretionary." *Davis*, 665 F.2d at 935; *Peterson v. Califano*, 631 F.2d 628, 630 (9th Cir. 1980) (discussing *Sanders* and noting that "by authorizing judicial review of a final decision made 'after a hearing,' [the Act] referred to decisions where a hearing was mandatory, not optional."). As such, Plaintiff is not entitled, as a matter of right, to a hearing to determine whether res judicata bars the reopening of her claim. *Rogerson v. Sec'y of Health & Hum. Servs.*, 872 F.2d 24, 29 (3d Cir. 1989) ("Rogerson's claims in her third[ ]application are essentially identical to those made in her prior claims so that the application of res judicata without a hearing does not violate her right to due process of

law.”)

The question then arises whether Plaintiff is deprived of due process when the Commissioner represents that Plaintiff will be afforded process to which, otherwise, she has no legal entitlement. For the first time in her Reply, Plaintiff states that specific administrative notices preceding the dismissal of her claim misled her to believe she would be granted a hearing, which she argues constitutes a violation of due process under *Gonzalez v. Sullivan*, 914 F.2d 1197, 1202-03 (9th Cir. 1990). Plaintiff argues, essentially, that because an administrative notice said a hearing would be scheduled, she is entitled to one. But *Gonzalez* is distinguishable because the notice at issue there did not meaningfully inform the Plaintiff of the process she was due under the constitution. *Id*. at 1203 (claimants have a protected property interest in Social Security disability benefits). Here, as established above, Plaintiff had no such right to a hearing on the res judicata issue. Due process affords her the right for a hearing on her application for benefits. *Udd*, 245 F.3d at 1099. This occurred in February 2017. Also, Plaintiff, who was represented at the time her hearing request was filed, fails to establish any kind of prejudice with respect to this misrepresentation or the alleged lack of notice that her request could be declined as res judicata. *Krumpelman*, 767 F.2d at 588 (“The Secretary points out persuasively that Krumpelman’s claim as to lack of notification of res judicata fails because Krumpelman does not show any prejudice from the alleged failure to give notice.”). Plaintiff merely asserts that “[b]y dismissing the claim without notice, [she] was denied an opportunity to effectively prepare and present argument to the ALJ.” (Pl. Br. at 17.)[9] Plaintiff under these circumstances is not entitled to a hearing on the res judicata issue, regardless of whether an administrative notice erroneously stated there would be one. Plaintiff has not stated a colorable constitutional claim sufficient to confer jurisdiction.

**IT IS THEREFORE ORDERED dismissing** Plaintiff’s claim for lack of subject matter jurisdiction.

---

[9] In other words, by denying Plaintiff’s hearing request, the Commissioner did not provide a hearing.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and to close this case.

Dated this 16th day of June, 2023.

G. Murray Snow
Chief United States District Judge